FILED

2011 JUN -1 PM 9:55

SOUTHERN DISTRICT OF CALIFORNIA

BY _____ alf _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 07cr2466 JM |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR REDUCTION OF SENTENCE |
| vs. | |
| GUADALUPE GONZALEZ ALVARADO, | |
| Defendant. | |

Pursuant to 28 U.S.C. §2255 Defendant Guadalupe Gonzalez-Alvardo ("Defendant") moves for a reduction in her custodial sentence ("Motion"). "As the files and records of the case conclusively show that the prisoner is entitled to no relief," 28 U.S.C. §2255(b), the court has not requested a response from the United States. For the reasons set forth below, the court denies the Motion and denies Defendant a certificate of appealability because she fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c).

## BACKGROUND

On August 8, 2008 Defendant entered a "straight-up" guilty plea to possession of methamphetamine with intent to distribute (Count 2) and possession of heroin with intent to distribute (Count 3). Defendant was sentenced to a custodial sentence of 108 months, followed by a three year term of supervised release. The following statement of facts is taken from the Government's Sentencing Memorandum:

### A. Defendant's Arrest at the Port of Entry

On August 10, 2007, Defendant entered the United States driving her rental vehicle. There was a TECS generated referral placed by the ICE agent based on the activity, the day before. Agents found two Tupperware containers with 1.10 kilograms of methamphetamine in her purse. Defendant admitted that it contained "crystal" to the inspectors. Defendant had 1.85 kilograms of heroin from the waistband area of her pants.

### B. Delivery of Methamphetamine By Defendant The Day Before

During an unrelated DEA state wiretap investigation, agents were monitoring calls of Eric Artiaga, who arranged for the distribution of methamphetamine (he resided in Mexico). On August 9, 2007, Artiaga was arranging for the distribution of methamphetamine for an unidentified person named "Memo" (who was interesting in buying methamphetamine). During intercepted calls, they described the courier (the Defendant) as driving a wine-colored Impala, who was to arrive to meet with Memo. They claimed that Defendant was already there at the Target on Palamor. Artiaga claimed that she had to go back for the other "two trucks" (two pounds of methamphetamine) right now. They described how the drugs are on her (on her body). Artiaga describes how the Defendant can go with Memo or how Memo can go into her car (to remove the drugs). Artiaga said "two vehicles today" (two pounds of methamphetamine) and in a "little while" another "two" and then "another two tomorrow." (Exhibit 1, Affidavit of DEA Agent David McGuckin.). At one point, Memo can not locate Defendant's vehicle. After Memo meets with the Defendant, agents intercept additional calls where Artiaga claims that "she's been doing it that way for a while" to Memo and later states "that's how she does it all the time" (referring to how she transports the drugs on her body).

Based on the activities in the Target parking lot, agents observed the Defendant in the rental vehicle and subsequently placed her vehicle into TECS, expecting that she would be delivering two pounds of methamphetamine later that day. Later, Artiaga is informing "Juan" that the "lady" (the Defendant) was on her way, but she had to take her son to the doctor's office and she (the Defendant) did not like doing it at night, but that she would do it the next day (August 10, 2008).

### C. Defendant's Involvement With Harold Garner

In another unrelated federal wiretap investigation, DEA Special Agent Thomas Lennox had identified the Defendant as the courier for Harold Garner (GARNER) who distributed pound quantities of methamphetamine locally and to other states. (Exhibit 1 – Complaint implicating Defendant as courier). Defendant was intercepted on that federal wiretap on many occasion, smuggling methamphetamine from Mexico in to the United States for distribution in Southern California.

During that wiretap investigation, it became clear that Defendant worked for other drug trafficking organizations. Defendant discussed the difficulties of locating methamphetamine at a fair price and the current prices for methamphetamine (ranging from 12-14,000). Defendant knew of other sources for methamphetamine, but they were still too expensive for GARNER.

### D. Defendant's First Debrief

When Defendant was arrested in August 2007, Defendant offered to cooperate through her then-attorney Gretchen Von Helms. Prior to the debrief, the prosecutor orally informed Defendant that any statements would not be used against her unless she lied and misled the interviewing agents. The agent from the state wiretap case (Agent McGlucken) and the federal wiretap (Agent Tom Lennox) were present. There was no

written cooperation or proffer agreement.

Defendant claimed that she was hired by "Norma" to cross the heroin and methamphetamine in her possession on August 10, 2007. Defendant claimed that she worked for "Norma" twice a month crossing drugs into the United States. She said that she smuggled drugs for Norma since January 2007 (approximately 16 times). She also claimed that she picked up money for Norma – on one occasion, she picked up $70,000; on others, she believed the quantity was more based on the size of the bundles.

On August 10, 2007, when she was arrested, Defendant said that she was instructed to take the methamphetamine to Target. When asked the last time she smuggled for "Norma," defendant claimed two weeks earlier at K-Mart). [NOTE: Defendant never told the interviewing agents that she smuggled narcotics the day before at the same Target location and never told the agents about the identities or descriptions of the men in the Target parking lot.]

Defendant initially claimed that she rented one car (August 2007) and that "Norma" paid for that rental vehicle, but when agents confronted her about other rental agreements in the defendant's name, defendant said that she rented cars since January 2007 at the direction of Norma, although the rental agreements go back to the summer of 2006. When agents confronted her with 17 prior rental agreements since June 2006 to August 2007, defendant then admitted that she worked for "Gordo" whom she met through Norma, by smuggling 5 pounds of methamphetamine on only two occasions. However, when asked about the high mileage of the vehicles, she eventually claimed that she smuggled for "Memo" (Paris' brother-in-law), smuggling three times a week for the past year, transporting between 2-15 pounds on each occasion. [NOTE: This is not the same "Memo" who met her in the parking lot at Target on August 9, 2007, because that "Memo" did not know what she looked like or who she was.] She never claimed that she met Memo through Norma.

Defendant did not provide any information about the full names of the traffickers. For example, while she claimed that she knew Norma for many years, she told the agents that she did not know Norma's last name or other information about her. She provided a hair saloon location in Mexico as a business associated with Norma, but did not provide any information about where she lived (she did not draw any maps). She did not know "Gordo's" last name or "Memo's" last name. During the interview, she never claimed that she was a methamphetamine courier for GARNER (his phone numbers were in her phone directory). Similarly, she did not mention her activities the day before in the Target parking lot on August 9, 2007, or provide any description of these individuals.

E. Attempted Interview

Defendant attempted to "cooperate" according to her attorney, so another meeting was arranged, but Defendant elected not to provide any additional information.

F. Safety Valve Interview

During the safety valve interview, Defendant expanded the number of times she imported and smuggled for Norma and Norma's associates (far greater than 16 times). In addition, Defendant was truthful about the offense.

(Ct. Dkt. 36).

## DISCUSSION

**Legal Standards**

28 U.S.C. §2255

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), "A prisoner in custody under sentence of a court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence was in excess of the maximum authorized by law . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. AEDPA applies only to habeas petitions that were filed after its effective date (April 24, 1996). See Lindh v. Murphy, 521 U.S. 320, 326-27 (1997). Motions to contest the legality of a sentence must generally be filed under section 2255 in the court in which the petitioner was sentenced. See Hernandez v. Campbell, 204 F.3d 861, 864 (2000). "Section 2255 is available to prisoners claiming the right to be released from custody." United States v. Thiele, 314 F.3d 399, 400 (9th Cir. 2002).

Ineffective Assistance of Counsel

The law regarding ineffective assistance of counsel is well settled. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated a two-prong test to analyze claims of ineffective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, Defendant must show both deficient performance by counsel (the "incompetence prong"), and that such deficient performance prejudiced his defense (the "prejudice prong"). Id. at 687.

To demonstrate deficient performance by counsel, the incompetence prong, Defendant must show that counsel's performance was "outside the wide range of professional competent assistance." Id. at 690. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. Defendant must show that his counsel's performance failed to meet an objective standard of reasonableness. Id. at 689. In evaluating a claim of ineffective assistance of counsel, the court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. As stated by the Ninth Circuit, "we

'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Jones v. Ryan, 583 F.3d 626, 636-37 (9th Cir.2009) (quoting Strickland, 466 U.S. at 689 (citation and quotation marks omitted)). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Under the prejudice prong, Defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. That is, Defendant must demonstrate "that counsel's errors were so serious as to deprive [her] of a fair trial." Id. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691.

**Right to a Plea Agreement**

Defendant contends that her counsel was ineffective because she failed to obtain a plea agreement and thereby "foreclosed various options in the sentencing range that prejudiced defendant." (Motion at p.1). The court denies this contention because there is no constitutional or statutory right to a plea agreement and therefore trial counsel could not be ineffective in failing to obtain one.

The United States Supreme Court has long recognized that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." Weatherford v. Bursey, 429 U.S. 545, 561 (1977); United States v. Osif, 789 F.2d 1404, 1405 (9th Cir.1986) ("a defendant does not have a constitutional right to a plea bargain"). Defendant cites no authority that a defense attorney has a duty to initiate plea negotiations. This court could not locate any authority obligating defense

counsel to seek a plea agreement on the defendant's behalf. See e.g., Welch v. United States, Docket No. 09-2873, 2010 WL 1538866, at *3 (3rd Cir. April 19, 2010) (unpublished) ("It is well-established ... that counsel does not have an absolute obligation to pursue plea negotiations in every case."); United States v. Huddy, 184 Fed. Appx. 765, *767 (10th Cir. June 19, 2006) (unpublished) (rejecting the defendant's argument that her counsel was ineffective for failing to initiate plea negotiations); United States v. Cabaccang, 2010 WL 3000196 (D. Guam July 28, 2010) (unpublished) ("Because trial counsel was under no duty to initiate plea negotiations, he was not required to request a plea agreement from the Government prosecutor.")

Rule 2 of Rules Governing Section 2255 Proceedings requires the Motion to "state the facts supporting each ground." The only fact cited by Defendant is that "Defense Counsel did not obtain a plea agreement." On this fact, Defendant is not entitled to relief because trial counsel was under no duty to initiate plea negotiations, nor required to request a plea agreement from the Government prosecutor. Moreover, even if trial counsel had made a plea agreement request, the prosecutor is not obligated to offer a plea bargain. See Weatherford, 429 U.S. at 561.

The only authority cited by Defendant, United States v. Herrera, 412 F.3d 577 (5th Cir. 2005), is not helpful to her. There, the defendant rejected a plea offer with a maximum 48 month custodial sentence based upon counsel's advice that, if he proceeded to trial, he faced a maximum 51 month maximum guideline sentence. In actuality, the defendant faced a 78 to 97 month sentence. The court concluded that defense counsel's performance was deficient because it did not permit the defendant to make an intelligent choice about whether to accept or reject the plea. Here, Herrera is not helpful to Defendant because there are no facts suggesting that she was ever offered, or sought, a plea agreement.

Accordingly, the court concludes that Defendant fails to establish that her counsel provided deficient performance.

**The Challenge to Drug Quantity**

Defendant contends that counsel provided ineffective assistance of counsel by failing to object to the drug quantity. The only authority cited in support of this claim is <u>United States v. Gordon</u>, 156 F.3d 376 (2nd Cir. 1998). This authority is not helpful to Defendant because it does not discuss any issue related to drug quantity. Rather, the Second Circuit reached the unremarkable conclusion that defense counsel who "grossly underestimate" the potential sentence provides ineffective assistance of counsel.

Here, the court denies this ground for relief because Defendant admitted in open court that she possessed more than 500 grams of methamphetamine and more than one kilogram of heroin. (RT 8:14-9:10; 11:3-11). As Defendant admitted the quantity of methamphetamine and heroin (and she fails to contradict her sworn statements), Defendant fails to satisfy either prong of <u>Strickland</u>.

**Minor Role**

Defendant contends that counsel failed to determine Defendant's role in the drug trafficking conspiracy. Apparently, Defendant contends that defense counsel should have sought a Fed.R.Crim.P. 7(f) bill of particulars on Count 1, the conspiracy count in the information. (Ct. Dkt. 6).

This argument is without merit as the conspiracy count was dismissed and did not form a basis for Defendant's sentence. Consequently, this contention fails to satisfy either prong of <u>Strickland</u>.

In sum, the court denies the Motion and denies Defendant a certificate of appealability pursuant to 28 U.S.C. §2253.

**IT IS SO ORDERED.**

DATED: May 27, 2011

JEFFREY T. MILLER
United States District Judge

cc: All parties